**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **BROWNSTONE PUBLISHING, LLC**, d/b/a Angie's List, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) **CAUSE NO. 1:07-cv-1630-SEB-JMS** |
| | ) |
| **AT&T, INC.; AMERITECH PUBLISHING, INC.,** d/b/a AT&T Advertising & Publishing; **and AT&T YELLOW PAGES HOLDINGS, LLC**, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

**E N T R Y**

**Plaintiff's Motion to Amend Judgment (doc. 52)**
**Defendants' Motion to Strike Plaintiff's Reply (doc. 67)**
**Angie's List's Motion for Leave to File Amended Complaint (doc. 53)**
**Angie's List's Motion to Substitute Proposed Second Amended Complaint (doc. 62)**

Plaintiff ("Angie's List") asserted federal and state claims against Defendants

(collectively, "Ameritech"), seeking damages for past, and an injunction prohibiting future,

publishing of third-party advertisements containing Angie's List's trademarks in Ameritech's

Yellow Pages directories.  On Ameritech's motion, the Court dismissed Angie's List's federal

claims of trademark infringement and unfair competition under the Lanham Act for failure to

state a claim, lack of standing, and failure to join necessary parties.  Having dismissed the

federal claims, the Court declined to exercise supplemental jurisdiction over the state claims.

The Judgment dismissed the federal claims with prejudice and the state claims without prejudice.

Angie's List timely filed the present motion under Fed.R.Civ.P. 59(e) to alter or amend the

1

judgment to read that the federal claims are dismissed without prejudice. Contemporaneously, Angie's List filed a motion under Rule 15(a)(2) for leave to amend its complaint. Because that motion can be considered only if, and when, the Court amends the judgment, it is not ripe and the parties' briefing on the Rule 15 matters has been suspended pending resolution of the present motion to amend.

A preliminary matter is Ameritech's motion to strike Angie's List's Reply in support of its Rule 59(e) motion because it presents issues and arguments not raised in its initial motion and brief. Ameritech characterizes Angie's List's Reply as another example of its "dismissive" litigation practice in this case, which the Court has already condemned. In the alternative, Ameritech asks the Court to grant it an opportunity to respond to Angie's List's new issues and arguments. Angie's List concedes that it "did not fully address the underlying merits of the Court's decision in its Motion to Amend Judgment, and, generally, courts do not need to address arguments that were not raised in the original motion", (Plaintiff's Response to Motion to Strike (doc. 74), at 3), but asks for the Court's indulgence because it would defeat the purposes of Rule 59 and the interests of judicial economy and preference for resolutions on the merits to refuse to consider persuasive arguments that, if dismissed, simply will be represented as grounds for a meritorious appeal and potential remand, (*id.,* at 4).

Although Angie's List fails to offer any explanation or excuse for raising its new arguments and issues so late, one is evident: three days after Ameritech filed its responses to Angie's List's Rules 59(e) and 15(a)(2) motions, new counsel entered their appearances for Angie's List, old counsel withdrew, and, eleven days later, Angie's List filed its replies in

support of its two motions, along with a new motion to substitute a substantially different proposed second amended complaint.  While the substance of these latest filings demonstrates an advocacy that is a significant improvement on the "cursory and muddled 'shrug of the shoulders'" that characterized its briefing on the motion to dismiss, Entry on Motion to Dismiss (doc. 49), at 11-12, it is well-settled that a change of counsel does not relieve a party of the effects of the rules of practice or otherwise excuse prior counsel's lapses.  Parties are bound by their attorney's acts and omissions in litigation because their attorneys are their agents.  Any other policy would allow easy evasion of parties' and counsel's obligations and unduly complicate and prolong case management.  In this instance, however, the new arguments and issues do not significantly impact our resolution of the pending motions and we deny the motion to strike as moot.

Angie's List's brief Rule 59(e) motion, as written, is an appeal to the discretion of the Court to correct an asserted discrete error in the Court's judgment: that it dismissed the federal claims *with* prejudice.  It makes the procedural argument that the Court properly should have dismissed its claims without prejudice — in other words, that it should have dismissed only the *complaint* (the federal claims in the complaint, actually), not the *suit*, thus allowing Angie's List the opportunity to seek leave to file an amended complaint curing the deficiencies.  In its Rule 59(e) motion, Angie's List only briefly refers to its contemporaneous Rule 15 motion seeking such leave with the comment that its proposed new complaint "resolves all the concerns identified in the Court's Entry of Dismissal."   Angie's List does not otherwise address the Entry's rulings on the merits of its claims.  (Motion to Amend Judgment (doc. 52), at 3).  While it is true, as Angie's List argues, that leave to amend should be freely given absent an apparent or

3

declared reason, such as undue delay, bad faith, undue prejudice, or futility, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Commission*, 377 F.3d 682, 687 (7th Cir. 2004), a party's right to amend as a matter of course[1] and the presumption that leave to amend should be freely given disappear after judgment has been entered, *Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (1984).  On the other hand, while Ameritech cited decisions of the Court of Appeals for the Seventh Circuit affirming lower-court dismissals of complaints with prejudice under Rule 12(b)(6), (Response to Motion to Amend (doc. 56), at 4), in none of those decisions was the propriety of the prejudicial aspect of the dismissals either addressed or apparently challenged.

There is precedent from the Court of Appeals indicating that a dismissal without prejudice for failure to state a claim — *i.e.*, affording a plaintiff an opportunity to correct pleading defects after dismissal — is the preferred course absent special circumstances.  *See*, *e.g.*, *Foster v. Dislike*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint"); *Eades v. Thompson*, 823 F.2d 1055, 1062-63 (7th Cir. 1987); *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 609-10 (7th Cir. 1987).   In the particular circumstances of this case, we are inclined to agree with this principle.

---

[1] Angie's List had already used up its one-time right to amend without leave when it filed its first amended complaint.

However, we reiterate what we stated in our Entry granting Ameritech's motion to dismiss:

> Motion practice is not an exercise in trial and error or maybe-maybe not where a party can reserve arguments to present later if earlier ones fail. The Court is entitled to assume that, if Angie's List had viable arguments to support its claim, it would have presented them. The Court will not conduct Angie's List's research and build its analysis in order to find facts and law to support its own claims.

Entry of June 11, 2008 (doc. 49), at 12. "It was [there] and [then], on [that] motion, that Angie's List was required to demonstrate the legal and factual sufficiency of its claim and it failed to do so." *Id.* To the same effect is the principle that a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier. *Foster*, 545 F.3d at 584 ("Relief under Rules 59(e) and 60(b) are extraordinary remedies reserved for the exceptional case and the mere desire to expand the allegations of a dismissed complaint does not, by itself, normally merit lifting the judgment"); *Sigsworth v. City of Aurora, Illinois*, 487 F.3d 506, 512 (7th Cir. 2007) ("it is well-settled that a Rule 59(e) motion is not properly utilized 'to advance arguments or theories that could and should have been made before the district court rendered a judgment . . . .'"). *See also*, *DeWit v. Firstar Corp.*, 904 F.Supp. 1476, 1495 (N.D. Iowa 1995) (citing cases from other circuits). In short, neither a Rule 59(e) motion nor a Rule 15 motion for leave to amend following dismissal should allow a plaintiff a "second bite at the apple." *See*, *Greenlaw v. United States*, 128 S.Ct. 2559, 2564,171 L.Ed.2d 399 (2008).[2]

---

[2] "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. * * * [A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling

When presented with a Rule 59(e) motion coupled with a motion to amend, a court is required to first consider the merits of the motion to amend, *Harris*, 27 F.3d at 1287, unless the Rule 59(e) motion is "doomed to denial" for independent reasons, *Sigsworth*, 487 F.3d at 512. We conclude that, in the particular circumstances of this case, the judgment dismissing Angie's List's federal claims should have been entered without prejudice.  However, because Angie's List's Rule 15(a) motion for leave to amend, with proposed and substitute second amended complaint attached, already has been presented, we will examine the Rule 15 arguments, such as they are at this point,[3] together with the parties' Rule 59(e) arguments to determine whether lifting the judgment would, nonetheless, clearly be futile in light of the holdings in the Entry of Dismissal.

Angie's List's filings contain many arguments for why its proposed federal Lanham Act claims are viable but most of its explanations of how the Court erred in rejecting them are based on arguments, facts, and law that could and should have been presented before and, as we've stated, it cannot now exhume that body, let alone attempt to resuscitate it.  It chiefly blames Ameritech for distracting the Court's attention from the real issues and applicable law, and it concedes its own (read:  previous counsel's) failure to fully present its case earlier, but it would

_____

them to relief.'"

   [3] Both Angie's List's motion for leave to file an amended complaint (doc. 53) and Ameritech's motion to strike the reply thereto (doc. 67) have been briefed through replies.  In its motion to strike, Ameritech asked for an opportunity to file a surresponse to Angie's List's reply if it was not stricken.  Angie's List also filed a motion to substitute its proposed complaint (doc. 62) to which Ameritech responded with a motion to suspend further briefing on the Rule 15 motions pending the Court's ruling on the Rule 59(e) motion (doc. 66).  That motion was granted, allowing Ameritech fifteen days after ruling on the Rule 59(e) motion in which to file "responses to the Rule 15 Filings, if necessary," (doc. 72).

have been better served by focusing on asserting manifest errors of fact or law that the Court made in examining the arguments that were presented at the time. Angie's List forfeited any arguments or issues that it could have raised before and its dismal litigation of the motion to dismiss doesn't warrant any exercise of discretion in its favor now. The Court cannot be expected to care more for Angie's List's claims than Angie's List does itself.

We briefly summarize the context and holdings of the Entry of Dismissal. Angie's List's First Amended Complaint pled federal claims under the Lanham Act for trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125, both direct and contributory in each case. While not citing 15 U.S.C. § 1114 explicitly, Ameritech's motion to dismiss covered both trademark infringement and unfair competition in its legal and factual arguments and the motion was clearly intended to encompass all of the federal claims. Ameritech moved to dismiss the First Amended Complaint's claims of direct trademark infringement (§ 1114) and direct unfair competition (§1125) on the grounds that they failed to plausibly allege that (1) Ameritech "used" Angie's List's trademarks as trademarks and (2) the inclusion of Angie's List trademarks in third-party advertisements in the Yellow Pages directories were likely to cause confusion, cause mistake, or deceive as to the source or origin of the Yellow Pages or Angie's List's directories — in other words, cause confusion among customers about whether Ameritech produces Angie's Lists' directories or Angie's List produces the Yellow Pages.

In support of its argument, Ameritech cited *Packman v. Chicago Tribune Company*, 267 F.3d 628 (7th Cir. 2001), and *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722 (7th Cir. 1998). *Platinum Home Mortgage* is a decision applying § 1125 and

*Packman* is a decision applying both § 1114 and 1125, and they both clearly hold that the consumer confusion required under both sections is source or origin confusion.  *Platinum Home Mortgage*, 149 F.3d at 726; *Packman*, 267 F.3d at 636, 637, 639, 640.  Ameritech contended that the First Amended Complaint did not plead or suggest any plausible basis for a likelihood of market confusion between the Yellow Pages and Angie's List, which was essential to its direct Lanham Act claims.

In a response which we found to be "half-hearted at best, and disingenuous at worst," Angie's List did not address the *Packman* or *Platinum Home Mortgage* decisions — except to dismiss *Packman* as "a *summary judgment* case, not a *motion to dismiss* case", (Response to Motion to Dismiss (doc. 26), at 3) — and it did not address the definition of the likelihood-of-confusion elements under §§ 1114 and 1125.  Instead, Angie's List simply (1) asserted that its Lanham Act claims were "much broader than what Ameritech characterizes as 'direct trademark infringement', (*id.*); (2) diagramed "[t]he elements of a Lanham Act claim" paired with "citation[s] to applicable portions of the Complaint", (*id.*, at 3), which turned out to be a chart of excerpts of § 1125(a), never mentioning the elements of an action under § 1114; and (3) stated that numerous courts have held that a directory publisher "uses" a trademark that appears in a directory advertisement.

In support of the last point, Angie's List cited *Century 21 Real Estate Corp. of Northern Illinois v. R. M. Post, Inc.*, No. 88-C-0077, Memorandum Opinion and Order, 1988 WL 84741, 1988 U.S. District LEXIS 8739 (N.D. Ill., Aug. 9, 1988), and *Dial One of the Mid-South, Inc. v. BellSouth Telecommunications, Inc.*, 269 F.3d 523 (5th Cir. 2001).  Both cases found that

Yellow Pages publishers (including Ameritech itself in *Century 21*) could be liable for publishing infringing advertisements in their directories.  Angie's List did not develop an argument from these cases regarding the definitions of (1) confusion, mistake, or deception; (2) affiliation, connection, or association of persons; or (3) origin, sponsorship, or approval of goods that is required for actions under §§ 1114(1) or 1125(1)(A).  We found these cases to be inapposite to the interpretation of the likelihood-of-confusion element in a direct § 1114 or § 1125 claim because they both involved contributory-violation claims.  Entry of June 11, 2008, at 9.  On reconsideration, we conclude that this might have been an incorrect interpretation.

Although contributory, or "secondary", trademark-infringement and unfair-competition claims are not explicit in the texts of §§ 1114 or 1125, they are based on those statutory provisions.  *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850, 855 102 S.Ct. 2182, 2186, 2189 (1982); *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1245 (11th Cir. 2007); *Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992); *Watts v. Network Solutions, Inc.*, 1999 WL 778589, * 6 (S.D. Ind., May 7, 1999), *affirmed*, 202 F.3d 276 (7th Cir. 1999) (unpublished).  *See*, J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, *4th ed.* at § 25:17 *et seq.* (2008).  In simplified terms, a contributory violation occurs when a person intentionally induces another person to violate § 1114 or § 1125 or a person provides goods or services to another person whom the provider knows or has reason to know is engaging in or will engage in trademark infringement or unfair competition.  A claim of contributory violation by a mark owner against a contributor requires an allegation of direct infringement by a third party whom the contributor assisted.  *Optimum Technologies*, 496 F.3d at 1245.  In a contributory violation

9

action, therefore, the "confusion, mistake, or deception" element of a direct claim is not applied to the contributing violator's actions, but to the infringing third-party's.

The claims against the directory publishers that were held viable in *Century 21* were a § 1114 direct trademark-infringement claim and a § 1125 contributory unfair-competition claim. In simplified terms, § 1114 provides a cause of action against any person who either (1) uses a trademark in connection with the sale, distribution, or advertising of any goods or services where that use is "likely to cause confusion, or to cause mistake, or to deceive," § 1114(1)(a); or (2) reproduces and applies a trademark to labels, prints, or advertisements intended to be used in commerce in connection with the sale, distribution, or advertising of goods or services where such use is "likely to cause confusion, or to cause mistake, or to deceive," § 1114(1)(b).  In contrast, a § 1125(a)(1)(A) claim is against a person who, in connection with any goods or services, uses a word, term, name, symbol, device, or false designation or description of fact "which is likely to cause confusion, or to cause mistake, or to deceive as to [1] the affiliation, connection, or association of *such person* with another person, or [2] as to the origin, sponsorship, or approval of *his or her* goods, services or commercial activities by another person."  (Emphasis added).

There are significant differences between the texts of these provisions; specifically, a § 1114(1) claim is not as limited as a § 1125(a)(1)(A) claim.  Where the requisite "confusion, mistake, or deception" is not qualified under § 1114(1), the confusion, mistake, or deception required under § 1125(a)(1)(A) must be in regard to either (1) persons, namely the "affiliation, connection, or association" between the defendant user of the "word, symbol, device" *etc.* and

the plaintiff, or (2) product status, namely the "origin, sponsorship, or approval" of the defendant user's goods or services by the plaintiff.  These differences suggest that the likelihood of confusion required under § 1114 might not be limited to source or origin confusion and that what appears to be a contributory claim might actually be a direct claim under § 1114(1).  We are not confident, now, that *Packman* and *Platinum Home Mortgage* are controlling in the context of direct § 1114(1) claims.  Neither case involved a publisher producing advertisements for others or any third parties; they were direct actions by trademark owners against alleged infringers and the only confusion at issue was source or origin confusion.  While poorly developed and, in fact, barely presented, Angie's List's citation of *Century 21* did raise the issue of the proper scope of confusion for direct actions under § 1114(1), and we see now that we erred in concluding that claims under § 1114(1) are limited to source or origin conclusion.  We do not conclude that they are not so limited, however.  Resolution of this issue, and the viability of Angie's List claims under § 1114(1) will require research into the caselaw and statutes, and application of same to the facts in this cases and, for that, we prefer to receive (for the first time) the well-argued submissions of both of the parties.

We find no mistake by the Court in the Entry's dismissal of Angie's List's direct unfair-competition claim under § 1125(a)(1)(A).  That section requires customer confusion between a defendant and a plaintiff or between a defendant's goods or services and a plaintiff, which conforms to the origin or source confusion described in *Packman* and *Platinum Home Mortgage*.  In addition, Angie's List forfeited any contrary interpretation by not arguing for a different interpretation on the motion to dismiss.  Its *post hoc* arguments and showing are too late.

Likewise, we conclude that Angie's List cannot reassert any contributory claims under §§ 1114(1)[4] or 1125(a)(1)(A).  As our previous Entry noted, Angie's List chose to not offer any substantive response at all to Ameritech's motion against the contributory claims or to even acknowledge that such claims were asserted.  It is too late to defend them at this juncture. Ameritech moved to dismiss the contributory claims because (1) there was no allegation of direct infringement by third-party advertisers;[5] (2) Angie's List cannot allege direct infringement by the third-party advertisers because there cannot be any reasonable confusion that Angie's List is the source or origin of the third parties' goods or services; (3) the complaint failed to allege the requisite knowledge by Ameritech of third-party infringement; (4) Angie's List doesn't have standing to assert claims based on damages to third parties; and (5) third-party advertisers, as direct infringers, are necessary parties which the complaint failed to join.  While Angie's List could cure the last failure by naming necessary third parties in contributory claims, the other incurable obstacles make such a move futile.[6]

Finally, we note that any unpresented legal theories, facts, or law that were available to Angie's List to support its claims at the time of the motion-to-dismiss briefing are forfeited. Thus, a proposed amendment to add a trademark dilution claim under § 1125 would be futile.

_____

[4] We note here the discussion above about the distinction between a direct and a contributory claim under § 1114(1).

[5] On reconsideration, we conclude that, by asserting that Angie's List's trademark licenses forbid the publication of its award marks in others' directories, the complaint did allege direct infringement by third-party advertisers.  Correction of this error, however, does not overcome the other obstacles to the assertion of contributory claims.

[6] No ruling is intended on the ability of Angie's List to add parties to direct-infringement claims.

Angie's List broadly asserted that its Lanham Act claims fell under §§ 1114 and 1125, First Amended Complaint, ¶¶ 1, 43, so such claims and theories were included in the scope of the complaint's claims and thus available to Angie's List at the outset.  It supported the plausibility and viability of those claims against Ameritech's motion to dismiss only under §§ 1114(1) and 1125(a)(1)(A), without mentioning any claim for or theory of trademark dilution.  It is simply too late to assert such a claim or theory now.

Because these rulings significantly change the landscape of the permissible claims in this case, the parties must reassess their positions before proceeding and we prefer clean motions and briefs on Angie's List's motion for leave to amend and the proposed second amended complaint. Therefore, we will moot the pending Rule 15 motions with leave to refile.  Any objections to Angie's List's new proposed claims will be addressed in briefing on its motion for leave to file a second amended complaint.  The parties shall promptly confer with the magistrate judge on future proceedings, particularly a briefing schedule for a new Rule 15 motion.

**Conclusion and Orders**

1.  Angie's List's Motion to Amend Judgment under Fed. R. Civ. P. 59(e), (doc. 52), is **GRANTED** as herein provided.

2.  The Judgment of dismissal (doc. 50) is **VACATED** and the Clerk is directed to reopen this Cause on the Court's docket.

3.  The Entry of June 11, 2008 (doc. 49) is modified by the present Entry as set forth herein.  For the reasons stated in the Entry of June 11, 2008 and in the present Entry:  (a) Plaintiff's claims under 15 U.S.C. § 1125 and its contributory trademark-infringement claims

13

under 15 U.S.C. § 1114 are dismissed with prejudice; (b) the dismissal of Plaintiff's direct

trademark-infringement claims under 15 U.S.C. § 1114 and state-law claims is vacated.

    4.  Ameritech's Motion to Strike Rule 59 Reply (doc. 67) is **DENIED AS MOOT**.

    5.  Angie's List's Motion for Leave to File Amended Complaint (doc. 53) is **DENIED**

**AS MOOT**.

    6.  Angie's List's Motion to Substitute Proposed Second Amended Complaint (doc. 62) is

**DENIED AS MOOT**.


Date:   03/24/2009


_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Jason L. Fulk
HOOVER HULL LLP
jfulk@hooverhull.com,vwilliams@hooverhull.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com,vwilliams@hooverhull.com

Samuel Dickinson Littlepage
DICKINSON WRIGHT PLLC
slittlepage@dickinsonwright.com,mcrew@dickinsonwright.com

Michael T. McNally
ICE MILLER LLP
mcnally@icemiller.com,nansie.whitt@icemiller.com

Nicole M. Meyer

DICKINSON WRIGHT PLLC
nmeyer@dickinsonwright.com,mccrew@dickinsonwright.com

Bradley M. Stohry
ICE MILLER LLP
stohry@icemiller.com,carol.jansen@icemiller.com

Michael A. Swift
ICE MILLER LLP
michael.swift@icemiller.com,suzanne.gibbs@icemiller.com

Michael A. Wukmer
ICE MILLER LLP
michael.wukmer@icemiller.com,julie.butler@icemiller.com