In the
UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGIE'S LIST, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CAUSE NO. 1:07-cv-1630-SEB-JMS |
| AMERITECH PUBLISHING, INC., d/b/a | ) |
| AT&T Advertising & Publishing, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## E N T R Y

### Defendant Ameritech Publishing, Inc.'s Motion to Dismiss
### Second Amended and Supplemental Complaint (doc. 100)

Defendant Ameritech Publishing, Inc. ("AT&T") moves to dismiss the claims of Plaintiff Angie's List, Inc. under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Against AT&T, the Second Amended and Supplemental Complaint (doc. 95) ("Complaint") asserts claims of direct trademark infringement (Count II), contributory trademark infringement (Count VII), and contributory unfair competition (Count VIII), all in violation of the federal Lanham Act, 15 U.S.C. §§ 1114(1)(b) and 1125(a). AT&T argues that the Complaint lacks essential factual allegations to make Angie's List's claims plausible and that the allegations that it does contain demonstrate that its claims are untenable. Angie's List's allegations, claims, and the elements of Lanham Act claims have been addressed in earlier entries of the Court, (doc. nos. 49, 76, and 91), and will be discussed herein only as necessary for purposes of clarity.

Pursuant to 15 U.S.C. § 1114(1)(b), trademark infringement occurs when a person,

without the consent of a trademark registrant, reproduces, counterfeits, copies, or colorably imitates a registered mark and applies such reproduction, counterfeit, copy, or colorable imitation to "advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive . . . ."  Pursuant to 15 U.S.C. § 1125(a), unfair competition occurs when a person, in connection with any goods or services, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ."  Although the objects of the confusion, mistake, or deception required for a trademark infringement claim are not defined in § 1114(1)(b), we have previously noted that the objects include not only source and origin confusion, but the same objects defined by § 1125(a) for unfair-competition actions:  confusion, mistake, or deception regarding (1) the affiliation, connection, or association of Angie's List with the defendant service providers and (2) the sponsorship or approval by Angie's List of the service providers' good or services.  Entry of August 31, 2009 (doc. 91) at 5.

In its Complaint, Angie's List alleges that the defendant service providers purchased, and AT&T published, advertisements in AT&T's Yellow Pages that included Angie's List's trademarks without its consent, *id*. ¶ 40-43, and that those uses of its marks likely caused and will cause consumer confusion or deception regarding (1) whether there is an affiliation or

sponsorship between the service providers and Angie's List; (2) whether Angie's List has authorized the service providers to use its marks; or (3) whether the service providers have been recognized for service quality by Angie's List, *id.* ¶ 50.  Angie's List licenses only one of its marks — the "Super Service Award" — which it awards annually to service providers who have achieved and maintained superior ratings by its members.  Complaint ¶ 35.  Award recipients are granted limited licenses to use the Award mark for one year[1] in certain of their marketing materials, but they are expressly forbidden to use the mark in advertisements appearing in non-Angie's List directories, including the Yellow Pages, or other mass-marketing materials.  *Id.*, ¶ 36.  Except for this limited license, Angie's List does not authorize service providers to use any of its marks.  Therefore, all of Angie's List's marks appearing in Yellow Pages advertisements are without Angie's List's consent or authorization.

AT&T makes two arguments against the viability of these claims:  first, the Complaint fails to adequately allege the element of likely consumer confusion and, second, the facts that are alleged demonstrate that there is no likelihood of consumer confusion.

**Insufficient allegations.**  Relying on the holding of *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007), that "[f]actual allegations must be enough to raise a right to relief above the speculative level,"[2] AT&T argues that the Complaint fails to allege

---

[1] The Award mark is changed annually, Complaint ¶ 36, presumably, by incorporating the Award year.

[2] Or, as we described it earlier in this case:  "[t]he allegations of a complaint must contain enough factual matter to plausibly suggest that each element of the claimed cause of action actually exists, not that the element's existence is possible, conceivable, or that facts exist that are merely consistent with the element's existence."  Entry of June 11, 2008 (doc. 49) at 4.

sufficient facts showing that any of the allegedly infringing Yellow Pages advertisements is likely to cause the consumer confusion that is the essence of a Lanham Act claim.

Specifically, AT&T contends that the Complaint fails to assert that each service-provider defendant made false or misleading statements likely to lead to consumer confusion. In its view, the only misconduct alleged in the Complaint are uses of Angie's List's marks without its consent, either by award-winning service providers in violation of their license agreements or by non-award-winning and non-licensed service providers, but neither of which alone constitutes either trademark infringement or unfair competition under the Lanham Act.

The Court has already held that the Lanham Act does not enforce mark holders' license agreements:

> The gravamen of a § 1114(1) trademark-infringement and § 1125(a) unfair-competition claim is consumer confusion. These sections of the Lanham Act do not enforce private licensing agreements and not every use of a protected trademark violate these sections. In order to prevail on its claims, Angie's List must prove that the unauthorized use of its servicemarks is likely to cause confusion, cause mistake, or deceive. Publication of Angie's List's marks in Ameritech's directories in violation of the terms of its licensing agreements with its award winners or any agreements with its listed service providers does not violate the Lanham Act absent the requisite confusion. Thus, at this stage, the terms of Angie's List's enforceable agreements with its award winners and listed service providers would appear to be relevant only to the issue of whether the allegedly infringing advertisers were legally authorized to use Angie's List's servicemarks.

Entry of August 31, 2009 (doc. 91) at 6. While Angie's List's response to the present motion suggests that it still believed that breach of a trademark license constitutes, *ipso facto*, a trademark violation, (Response (doc. 109) at 25), it took a step back from that position in its surreply, acknowledging that confusion or deception is an essential element of a trademark-

infringement action, regardless of license terms, (Surreply (doc. 116) at 4).

Given the early stage at which we are conducting our review, we conclude that Angie's List has adequately pled the element of confusion or deception for its trademark-infringement and unfair-competition claims against AT&T.  While it alleged that none of the defendant service providers were licensed or otherwise authorized to use its marks in AT&T's yellow pages, it also alleged that the use of its marks is likely to confuse or deceive:

> As the result of the use of the ANGIE'S LIST Marks in connection with the Infringing Advertisements, consumers that view the Infringing Advertisements are likely to be confused or deceived as to [1] whether there is an affiliation or sponsorship between the Service Providers and Angie's List, or [2] that Angie's List has authorized the Service Providers to use the ANGIE'S LIST Marks in the Infringing Advertisements, or [3] that the Service Providers have been recognized for service or quality by Angie's List, which, among other things, lessens the value of these trademarks.

Complaint ¶ 50 (brackets added).  AT&T argues that this is merely a "parroting" or "formulaic recitation" of the statutory language and that the Complaint otherwise lacks the minimal factual allegations required to render plausible the element of likely consumer confusion.  According to AT&T, the Lanham Act requires Angie's List to allege that, by using its marks in their Yellow Pages advertisements, the defendant service providers made false or misleading statements, which it could have done by alleging that the service providers were not endorsed by Angie's List or rated by its consumer members in its directories.  (Brief (doc. 101) at 10-11, 12).  But AT&T's argument is based on the assumption that consumers could have interpreted the appearance of Angie's List's mark in an advertisement in only two ways — either that the advertiser had received ratings, positive or negative, by Angie's List's members or that the advertiser was or had been recognized for superior service by Angie's List — either of which

inference, if true, would defeat a Lanham Act claim.  Therefore, Angie's List's failure to allege, let alone plead facts demonstrating, that each defendant service provider was not rated by Angie's List's members and had not received a Super Service Award, is fatal.

We conclude that the Complaint is sufficiently pled.  Unless there is no reasonable dispute, the likelihood-of-confusion element is a jury question.  In this case, there is a reasonable dispute about the inferences that consumers are likely to draw from the appearance of a particular Angie's List mark in a service provider's advertisement.  Depending on the specific mark, consumers might interpret its meaning neutrally, as signifying only that the advertiser simply has been reviewed by Angie's List's members, or consumers might interpret it affirmatively, signifying, for example, that the advertiser is or has been currently highly rated by Angie's List's members; is, or has been, officially endorsed or recognized by the Angie's List organization for its superior performance — through, *e.g.*, bestowal of an award or inclusion on a list of approved providers.  Angie's List attached to the Complaint copies of advertisements by defendant service providers which include the following uses of Angie's List's marks:

- The words "SEE US IN Angie's List."
- The full Super Service Award design and mark (FTR No. 2,790,803) including the words "Angie's List Super Service Award," but without indication of year.
- The Super Service Award design with the words "Angie's List," but without the words "Super Service Award" or designation of year.
- The words "Angie's List" alone, without any design.

Angie's List alleges that these uses of its marks are likely to confuse consumers as to whether there is an affiliation or sponsorship between Angie's List and the advertisers and whether Angie's List and/or its members currently endorses or recognizes the superior quality of the

advertiser's services. We conclude that Angie's List has fairly and adequately asserted that there is no affiliation or sponsorship between Angie's List and the defendant service providers and that Angie's List neither endorsed nor recognized the superior quality of the advertised services. We also conclude that a jury could reasonably find that consumers would be likely to draw the contrary inferences. Therefore, AT&T has not shown that the Complaint fails to state a claim on this ground.

This may be a Pyrrhic victory for Plaintiff, however, if the following *caveats* or reminders are ignored. A Lanham Act violation is not proved if the evidence shows that consumers viewing an Angie's List mark in an advertisement would infer that the advertiser, at the time, has been recognized by Angie's List for superior service and the advertiser is, in fact, a Super Service Award winner at the time. In that case, there would be no consumer confusion, notwithstanding any license violation. Angie's List cannot consent to its award winners using its marks on certain marketing materials specifically for the purpose of truthfully communicating their award status and then contend that the winners' use of the same or similar marks in directory advertisements that communicate the same message is likely to cause consumer confusion. In addition, if the evidence shows that a particular mark appearing in an advertisement truthfully communicates that consumers can find ratings of the advertiser's services through Angie's List, then there is no consumer confusion and no Lanham Act violation.[3] Finally, we reiterate that license terms are irrelevant to the issue of consumer

---

[3] Angie's List agrees: "While Angie's List concedes that a Service Provider could arguably advertise the fact that reviews regarding its services can be found at angieslist.com, in most instances, the Service Providers are doing more than communicating such a truthful fact. As a result, the vast majority of the uses of the ANGIE'S LIST Marks in the Directories are NOT

7

confusion. In the Complaint, Angie's List alleged that the defendant service providers' uses of its marks in the Yellow Pages were and are likely to cause consumer confusion as to whether Angie's List had authorized or licensed the advertisers to so use its marks. However, licensing confusion alone is not an element of a Lanham Act action; the use of Angie's List's marks must cause consumer confusion regarding affiliation, connection, or association on the one hand, or origin, sponsorship, or approval on the other.[4]

**Dispositive allegations.** AT&T argues that allegations made in the Complaint conclusively demonstrate that there is no likelihood of consumer confusion. It contends that, if any service provider is rated by Angie's List's members, then an "affiliation" or "connection" is created between Angie's List and the provider and the provider's use of Angie's List's marks in its Yellow Pages advertisements truthfully communicates that relationship to consumers. Thus, there can be no likelihood of consumer confusion. Otherwise, AT&T contends, service providers are placed in an untenable position: an affiliation or connection with Angie's List is unilaterally imposed on them if Angie's List members rate the quality of their services but Angie's List can restrict the truthful communication of that affiliation or connection to consumers. AT&T cited no authority supporting its broad definition of "affiliation" or "connection" under the Lanham Act and the definition that it proposes is too tenuous for us to

---

fair." (Response at 23).

[4] In some cases, where the trademark itself is the "triggering mechanism" for, or the object of, the sale of goods, consumer confusion over licensing can be a proxy for confusion over sponsorship. *See*, *Alpha Tau Omega Fraternity, Inc. v. Pure Country, Inc.*, No. IP 01-1054-C-B/F, Entry on Plaintiff's Motion for Partial Summary Judgment, 2004 WL 3391781, * 8-9 (S.D. Ind., Oct. 26, 2004). That is not the context of the present case, however.


accept without precedent. Therefore, we do not conclude as a matter of law that the defendant service providers are affiliated, connected, or associated with Angie's List merely because its members have independently and unilaterally rated the quality of the service providers' services. At any rate, even if we were to adopt AT&T definitions, the question of consumer confusion regarding sponsorship or approval would remain.

AT&T's motion is DENIED.

**IT IS SO ORDERED.**

Date: 06/15/2010

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

P. Adam Davis
DAVIS & SARBINOFF, LLP
adavis@d-slaw.com

Jason L. Fulk
HOOVER HULL, LLP
jfulk@hooverhull.com

Andrew W. Hull
HOOVER HULL, LLP
awhull@hooverhull.com

Samuel Dickinson Littlepage
DICKINSON WRIGHT, PLLC
slittlepage@dickinsonwright.com

Michael T. McNally
ICE MILLER, LLP
mcnally@icemiller.com

Nicole M. Meyer
DICKINSON WRIGHT, PLLC
nmeyer@dickinsonwright.com

John R. Price
JOHN R PRICE & ASSOCIATES
john@johnpricelaw.com

Eric Collins Redman
REDMAN LUDWIG, PC
eredman@redmanludwig.com

Bradley M. Stohry
ICE MILLER, LLP
stohry@icemiller.com

Michael A. Wukmer
ICE MILLER, LLP
michael.wukmer@icemiller.com